IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MASSACHUSETTS

ALICIA K. through her Guardian
And Next Friend, MICHELLE K. and
MICHELLE K. in Her Own Right

    Plaintiff(s)                        CIVIL ACTION

        v.                           NO.

PENTUCKET REGIONAL
SCHOOL DISTRICT & THE
BUREAU OF SPECIAL EDUCATION

    Defendant(s)

**COMPLAINT**

## I.   PRELIMINARY STATEMENT

    1.    Michelle K., ("Michelle") natural parent and next friend of Alicia K. ("Alicia")

bring the action on behalf of Alicia and, Michelle K. in her own right, against the Pentucket

Regional School District ("District") for depriving them both of substantial due process by

violating mandatory Procedural Safeguards required by the Individuals with Disabilities

Improvement Act, ("IDEA"), 20 U.S.C. §1401 et seq., failure to identify Alicia's disabilities by

misrepresenting that an evaluation had been done without providing any notice of procedural

safeguards or prior notice of refusal to evaluate, and for discrimination against Alicia on the

basis of her disability causing Alicia to be deprived of free and appropriate education (FAPE).

    2.    Alicia was a student in the District at all times from Kindergarten (1999) through

12th Grade (2012).  The District knew or should have known in 2002 that Alicia was a child with

a disability that affected her learning but instead of affording Alicia her rights they intentionally

withheld information, misrepresented to parent that they had addressed the concern and then

promoted her from grade to grade with total disregard for her right to a meaningful education intended to prepare her for a post secondary education that meets her aptitude, ability and interests. The District terminated Alicia's eligibility prematurely by failing to comply with mandatory due process procedural safeguards of the due process hearing which caused Alicia to be denied FAPE.

3.      Since Kindergarten Alicia has consistently been reported by teachers for all 13 years as "a pleasure to have in class", "delightful", "respectful", "responsible", "positive attitude" and always had "excellent conduct". These teachers also consistently reported significant concerns about her lack of "organizational skills, time management skills, taking too long to do things, not completing work in class, not completing work at home, not following directions, not paying attention or focusing, and expressed concerns that these "work habits" affected her learning.

4.      Alicia is a student who was deprived her right to a free and appropriate education ("FAPE") by District who acted in bad faith, with gross negligence and deliberate indifference in failing to appropriately evaluate Alicia in 2002, 2003 and 2004 by not uncovering all of her disabilities and by misrepresenting to Alicia's mother, Michelle K. that District Psychologist had in fact evaluated Alicia in November 2002, and withheld substantial information at that time and since. The District did not provide Alicia's mother, Michelle K. with the Notice of Procedural Safeguards or Prior Written Notice of Refusal to Evaluate. This misrepresentation by the District was known or should have been known based on the fact that they considered her to have a disability based on their own determination in 2002 but did not appropriately evaluate her as required to uncover all of her areas of disability, failing to meet their obligations of child find.

5.      The District then failed again to locate, identify or evaluate Alicia in 2010 or 2011 for special education based on information the school knew or should have known; specifically that she was considered by the District to be a Student with a disability and it was affecting her learning as reported by most of her teachers, her report cards and Alicia's mother, Michelle K. The District evaluated Alicia in October 2011 pursuant to Mother's request in May 2011, but they failed find her eligible for special education or 504/ADA by disregarding that the severe discrepancy between ability and achievement qualified Alicia for rights to IDEA or 504/ADA. The District intentionally misrepresented to Alicia and her Mother, Michelle K. again that her disability did not qualify for either because it was just "one area of disability".

6.      The District then again failed to comply with mandatory Procedural Safeguards as they failed to respond to Alicia's mother, Michelle's November 3rd 2011 request to examine student record and for an IEE at school district expense.  The District destroyed the School Psychologist written report from November 2002 without notifying Parent of their intention.  34 CFR 300.624 and throughout the entire course of the administrative process the District failed to convene a Resolution Meeting at all which denied Alicia FAPE or comply with any deadlines.

7.      Alicia has suffered injuries as a result of this harm.  During her high school years, Alicia was disqualified from participating in all sports, extracurricular activities and her school job due whenever her grades fell due to District policy.  Alicia was singled out and humiliated by her Writing Lab teacher in 9th grade who was her softball coach who made Alicia sit on the bench to finish her class work each day while the rest of the team practiced or played.  Alicia was not allowed to work her job at the school on Tech Crew where she operated the audio and visual equipment for school committee meetings and other school events, due to District policy. Alicia was disqualified to participate in the District's Color Guard, not allowed to travel with her

team and compete, and was informed by the Director that wanted to make Alicia the Team Captain, she was told she couldn't because of her grades and the District's Policy. Alicia's guidance counselor had known since 9th grade that her goal was to become an Engineer and she selected all of her elective courses throughout high school with the help of her guidance counselor with this goal in mind. Alicia's Final Grade Point Average (GPA) was 185th out of 187 students in her graduating class, which is a stark contrast to her aptitude and ability tests which are consistently in the top Above Average range and her SAT score (with accommodations) placed her Reading in the top 91[%] and Writing in the top 93% of the nation. Fortunately, Alicia is a resilient person with a secure sense of self worth and managed to cope emotionally with all of these failures better than most. This doesn't change the fact that Alicia has a lot of work ahead of her to make up for the years wasted taking classes that were not appropriate and did count toward her goals or prepare her for transition to post secondary education.

8.      Plaintiffs allege the District's actions have deprived Alicia of her rights under the Individuals with Disabilities Education Improvement Act ("IDEIA"), 20 U.S.C. §1401 *et seq*; Section 504 of the Rehabilitation Act of 1973, §794 *et seq*., ("Section 504"), Title II of the American Disabilities Act of 1990, 42 U.S.C. §§12101 *et seq*. ("ADA"), the Equal Protection Clause of the United States Constitution, and 42 U.S.C. § 1983.

9.      Plaintiffs seek injunctive relief, compensatory education, transition services and compensatory damages to provide Alicia with a meaning education and adequately prepare her for a post secondary education that meets her aptitude, abilities and interests and to compensate her and her mother, Michelle K. in her own right for the District's violations of her rights and the injuries she sustained as a result of these violations. Plaintiffs' see tuition reimbursement for the

4

year 2012-2013, paid by Michelle on behalf of Alicia as a result of being denied substantial due process resulting in a denial of FAPE. The Plaintiff's seek to enjoin Landmark College for prospective payment directly to Landmark for 2013-2014 year so that Alicia does not suffer irreparable harm by being left without any education program at all.[1]  Plaintiffs also seek to recover the attorney's fees and costs which they will incur in their effort to secure appropriate educational services for Alicia, as well as compensatory education, compensatory damages and attorney's fees. 20 U.S.C. § 1415 (i)(3)(B); 29 U.S.C. § 794a(b); 42 U.S.C. § 1988. Finally, Plaintiffs ask for any other relief this court finds fair and reasonable in consideration of the severity and duration of the District's bad faith and negligent behavior.

10.    Plaintiffs invoke the judicial review provisions of the IDEA 20 U.S.C. 1415(j)) in connection with the Hearing Officers decision to deny Alicia her procedurally protected, federally mandated due process hearing by her actions on May 31st which effectively delayed the Hearing permanently and was not within her discretion as she violated mandatory procedural safeguards, and by excluding Alicia from participating by refusing to transfer the Parental Rights at age of majority which is 18 in Massachusetts and occurred on July 25, 2012 permanently terminating her right to a FAPE, deprived Alicia of educational benefit by failing to enforce a resolution session and in all other ways excluding Plaintiffs from participating in her education.

11.    Plaintiffs invoke the judicial review provisions of the IDEA 1415(f)(3)(E) and (F), 1415(h)(4), 1415(o)) in connection with the Hearing Officers' decision to deny them a due process hearing by dismissing the entire complaint based on facts that were caused by the the BSEA and District's violations of mandatory due process procedural safeguards in 20 U.S.C.1415(f)(1)(B)).

---

[1] See Affidavits of Alicia K. and Alicia's mother, Michelle K. in support of injunctive relief.

12.     Plaintiffs invoke the judicial review provisions of the IDEA 20 U.S.C. 1415(i)(2) and (3)(A), 1415(l)) 1415(f)(1)(A), 1415(f)(3)(A)-(D)) with respect to determining as a matter of law, whether Districts actions in November 2002 qualify for an exemption to the Statutes of Limitations Specific misrepresentations by (1) the District that it had resolved the problem forming the basis of the due process complaint; or (2) The Districts withholding of information from the parent that was required under this part to be provided to the parent with respect to finding Alicia to have ADHD, and representing to Michelle that this was both an evaluation and that Alicia was not eligible for special education due to this being a medical condition, without providing her with any Notice of Procedural Safeguards or any Notice of Refusal to Evaluate.

13.     Plaintiffs invoke the judicial review provisions of the Equal Protection Clause of the United States Constitution, and 42 U.S.C. § 1983 in connection the District's failure to properly train their staff or develop appropriate procedures for conducting appropriate evaluations, complying with procedural safeguards, determining eligibility for IDEA and 504/ADA, failing to have a Section 504 representative at the eligibility meeting as required by Massachusetts law.

14.     Plaintiffs invoke the judicial review provisions of the Equal Protection Clause of the United States Constitution, and 42 U.S.C. § 1983 in connection with the BSEA's failure to train their staff and failure to develop appropriate policies and procedures for complying with due process requirements of IDEIA, specifically transferring the Rights of the Parent to the Student at the Age of Majority (18) consistent with 20 U.S.C. § 1415(m), 34 C.F.R. § 300.520 and Massachusetts ALM GL ch. 231, § 85P §85O , during the administrative review process and failure to allow the specific request by the Parent and Student to substitute parties upon reading the age of majority, in compliance with the Fed. R. Civ.P. 17(a)(3) allow the student to substitute

6

as the real party in interest, and not dismiss the claim for failure to do so when the BSEA is responsible for preventing party from doing so in the first place.

15.    The District's actions set forth below were done intentionally or with deliberate indifference to Plaintiff's federal statutory rights. The District knew or should have known that its' actions as set forth herein violated the standards of conduct which were legally required at the time those actions took place.

16.    The BSEA's actions set forth below were done intentionally or with deliberate indifference to Plaintiff's federal statutory rights. The BSEA knew or should have known that it's actions as set forth herein violated the standards of conduct which were legally required a the time those actions took place. The hearing officer did not commit discretionary acts; she violated procedural safeguards which are mandatory and required.

## II.    JURISDICTION AND VENUE

17.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343. Plaintiff's causes of action arise under 20 U.S.C. §1402, 29 U.S.C. §794, 42 U.S.C. § 2000d, §§ 12161-12165 and § 1983. Venue in this District is proper under 28 U.S.C. § 1391 because Plaintiffs reside within Essex County, Massachusetts, where Defendant School District is located, and where the Plaintiff's cause of action arose.

## III.   PARTIES

18.    Plaintiff Alicia K., ("Alicia") was born on July 25, 1991, and was a student in Pentucket Regional School District ("District") beginning in Kindergarten (2000-1) the through Twelfth Grade (2011-12). During Alicia's thirteen years in the District, Alicia was never properly evaluated or identified as a student with a disability and deprived of federally protected rights under IDEA and 504 and ADA and the Equal Protection Clause of the U.S. Constitution.

19.     Michelle K. is Alicia's mother.  At all relevant times to this action, she has resided in Groveland, Massachusetts and within the geographical boundaries of the District. Michelle K. in her own right was denied federally protected rights under IDEA and 504 and the Equal Protection Clause of the U.S. Constitution.

20.     The District is a local educational agency (LEA) within the meaning of the IDEA and Section 504.  As such, it receives federal funds for the purpose of educating children with disabilities within its boundaries.  The District is also a "public entity" as defined by Title II of the ADA.  42 U.S.C. § 12131(1)

21.     The District has the responsibility under federal and state law to assure that students with disabilities are properly evaluated, identified, and provided with appropriate special education, related services, supplemental supports, and/or accommodations to enable them to achieve meaningful education benefit and enjoy equal educational opportunities in relation to their typical developing age mates, and in the least restrictive appropriate environment given their individual needs.

22.     The BSEA Hearing Officer has the power and the duty to conduct a fair hearing; to ensure that the rights of all parties are protected in accordance with all applicable law. 603 CMR 28:08(5)(a)(b)(c); M.G.L. c. 69, § 1B; c. 69, §§ 1J and 1K, as amended by St. 2010, c. 12, §3; c. 71, § 38G.

## IV.     STATUTORY AND REGULATORY BACKGROUND

**"Child Find" and the Duty to Provide a Free and Appropriate Public Education**

23.     Any student with a disability who needs individualized instruction in order to benefit from his or her educational programming, and meets the state mandated age criteria, is

eligible to receive a free and appropriate special education (FAPE), comprised of special education and related services. 20 U.S.C. § 1401(a); 34 C.F.R. § 300.26(b)(3).

24.     Section 504 also requires that students with disabilities be provided FAPE. In addition, Section 504 prohibits the exclusion of, or discrimination against, any otherwise qualified individual with a disability by federal funds receipts, as does Title II of the ADA, 42 U.S.C. § 12132, et seq. Failure to provide accommodations and supplemental services constitutes discrimination for the purposes of both 504 and ADA.

25.     Both the IDEA and Section 504 require each State and Local Educational Agency (LEA) to locate, identify, and comprehensively evaluate every child with a disability who resides within its boundaries, whether or not those children are enrolled in the public school system. 34 C.F.R. § 300.125; 34 C.F.R. § 104.35.

26.     Evaluations must be tailored to assess all areas of educational need and must comprehensively examine all areas of suspected disability. 34 C.F.R. § 300.532(b).

27.     Evaluations are deficient when they fail to uncover areas of a child's learning disabilities. Warren G.V. Cumberland County School District, 190 F.3d 80 (3rd Cir. 1999). See also D.H. v. Manheim Township School District, 2005 U.S. Dist. LEXIS 39756 (November 29, 2005).

**Statute of Limitations for Claims of Compensatory Education**

28.     Both the IDEA and Section 504 provide procedural safeguards to enable meaningful parental participation in matters concerning their child's educational program, and allow parents to obtain administrative and judicial review of school districts' decisions concerning their child's education.

29.     On July 1, 2005, the Individuals with Disabilities Education Improvement Act (IDEIA) went into effect.  The IDEIA amends the IDEA in certain respects.  Among other things, it contains an express statute of limitations for claims of compensatory education. However, the IDEIA is not retroactive; moreover, it did not amend Section 504.

30.     Even where the IDEIA applies, a parent's claims for compensatory education are tolled when "the parent was prevented from requesting a hearing due to (i) specific misrepresentation by the local educational agency that it had resolved the problem forming the basis of the complaint; or (ii) the local education agency's withholding of information from the parent that was required under this part to be provided to the parent.  20 U.S.C. § 1415 (f)(3)(D).

## VI.     ADMINISTRATIVE EXHAUSTION

31.     On May 23, 2012 Alicia's mother, Michelle K. filed the request for an Expedited Due Process Hearing on May 23, 2012 to secure Student's eligibility rights under the Individuals with Disabilities Improvement Act, ("IDEIA"), 20 U.S.C. §1401 et seq; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 et seq., ("Section 504"), and Title II of the American Disabilities Act of 1990 42 U.S.C. §12101 et seq. ("ADA") with the intention of determining her eligibility, the extent of deprivation of her rights under any and all of these statutes and requested Compensatory Education as damages to make student whole in addition to transition services.

32.     Alicia's claims were filed by her mother, Michelle K. prior to her graduation and prior to her 18th birthday.

33.     The complaint alleged violations in finding Alicia ineligible for either IDEA or Section 504/ADA at the teams October 2011 and February 2012 meetings, reimbursement for IEE requested on November 3 2011, for 2002 violations of intentional misrepresenting District had completed an appropriate evaluation without providing any notice of procedural safeguards

to parents or notice of refusal to evaluate; withholding substantial information from Parent,

violating Parent's right to examine student's record by ignoring Parent's request in November

2011, and for destruction or withholding of student record, in particular the Districts School

Psychologist Assessment of ADHD, dated November 2002 without notifying parent in

accordance with 34 C.F.R. 300.624 [2]. District was deliberately indifferent to Students disabilities

in violation of Section 504 and ADA, Chapter 126 Equal Opportunities, Section 12102,

Definition of a Disability, for Child Find violations (34 C.F.R. 300.111), violations of federal

rights and procedural safeguards by not providing parent any notice or any indication they were

in fact refusing evaluate student in 2002, 2003 and 2004 (34 C.F.R. 300.501, 300.503,

300.504),and intentional misrepresentation to Parent in November 2002 that the District

Psychologist had evaluated student, provided a written report recommending they seek medical

professional as learning difficult was a medical condition (ADHD) requiring medication, which

rendered Alicia ineligible for special education.  The District withheld information by not telling

parent that even if student did have ADHD since it was affected her learning in the classroom

she would have been eligible for special education under IDEA in any event, and the District had

a duty to uncover all of student's disabilities once they considered her a student with ADHD who

was struggling in the classroom environment.  As a result Parent was seeking compensatory

education for Alicia as well as for transition services and damages.

34.     On May 25, 2012 Alicia's mother, Michelle K. received written notice from the

BSEA declined to issue an expedited hearing date so the regular timeline hearing was scheduled

for June 28, 2012.  The mandatory Resolution Meeting deadline was June 8, 2012, and the end of

the 30 day Resolution Session was June 25, 2012.  The deadline for the District's Response to

the Hearing Request was June 4, 2012.

---

[2] Fortunately, Mother retained report from 2002 in her personal records.

35.    On May 31ˢᵗ, 2012 The Hearing Officer violated Plaintiff's substantial due process rights to a hearing by disregarding specific mandatory procedural safeguards under IDEA by ordering a Pre-Hearing Conference sua sponta and delayed the Hearing indefinitely by not scheduling an alternate date (emphasis added).  The Hearing Officer asked the District's attorney to send a letter requesting the postponement; scheduling the Pre-hearing Conference for July 19, 2012, (21 days after the regular hearing timeline due process hearing of June 28, 2012).

36.    BSEA Rule V (D): When One Party or Neither Party Requests a Prehearing Conference: If the Hearing Officer determines that a prehearing conference is necessary, the conference may be scheduled, but shall not delay the hearing.

37.    Alicia's mother, Michelle K. never agreed to postpone the hearing date contrary to the District's letter alleging otherwise on June 5, 2012 and the Order dated June 7, 2012.[3]

38.    "A prehearing conference may be conducted only after a request for hearing has been filed with the BSEA and the parties have either completed or waived the resolution session."  It is a fact that the parties never completed or waived the resolution session so this was procedurally erroneous.  See BSEA Rule V (A) Prehearing Conference, Prerequisite.  Even if, arguendo the Hearing Officer misconstrued Plaintiff's agreement, the prehearing conference did not comply with due process requirements expressly stated in BSEA Rule V (C):  When Both Parties Request a Prehearing Conference "A Hearing Officer shall conduct such a prehearing conference upon joint request of the parties once the parties have either completed or waived the resolution session. (emphasis added).

39.    The BSEA failed to uphold their duty and responsibility of the SEA and other public agencies.  Each SEA must ensure that each public agency establishes, maintains, and

---

[3] District's attorney wrote request to postponement of automatic hearing date "due to the fact that the Parties agreed to a pre-hearing conference on July 19ᵗʰ".  Order dated June 7, 2012 pursuant to that letter is signed by R.E. (Reece Erlichman, Director of the BSEA on behalf of the Hearing Officer, Rosa Figueroa.

implements procedural safeguards that meet the requirements of §§ 300.500 through 300.536. [20 U.S.C. 1415(f)(1)(B)]

40.   The District responded to the Hearing Request due by June 4th on June 22, 2012. The District did not request Mediation. The District did not request agreement from the Plaintiff for a written agreement to waive the Resolution Meeting or Session. The District did not attempt to convene a Resolution Meeting at all at any time.

41.   Alicia turned 18 years old on July 25, 2012. Parent's rights transferred to Alicia. In Massachusetts, Alicia now held legal capacity to sign a contract and Alicia's mother, Michelle K. no longer had that authority. Alicia and her mother, Michelle K. requested on two separate occasions to add or substitute Alicia in accordance with Fed. R. Civ. P. 17(a)(3) . Plaintiff's first attempt was in their Answer to Order to Show Cause on November 27, 2012 and secondly in their Amended Complaint on December 20, 2012. The BSEA Hearing Officer never responded to either.

42.   At the same as this BSEA 12-8636 controversy was occurring, Alicia's mother, Michelle K. had an Appeal of BSEA Decision (10-6783 and 11-0931, January 2011) at the Essex County Superior Court on behalf of her son Christopher K ( ESCV-2011-00691-A); and on June 18th, initiated another Hearing Request for Christopher K. (BSEA 12-9569) for period from January 2011 to date which was assigned to another Hearing Officer. Plantiff's allege that the conditions are sufficient to state a claim that the BSEA breached their duty to protect Alicia's and Mother's rights as retaliation against Alicia's mother, Michelle K. for her perseverance in advocating for her son's rights.

43.   By misconstruing the contract language as they did, the BSEA and the District are interpreting the contract as against public policy. Alicia was not a party to the settlement

agreement, did not sign the contract, mother had no legal authority to dismiss Alicia's claims and never represented otherwise. In fact Alicia's mother, Michelle K. very explicitly informed both the District's Attorney as well as the Assistant Attorney General, Julie Goldman who was representing the BSEA at the time that she had a conflict of interest and would not sign. Mother was not representing Alicia at any point past her 18th birthday.

44.     Alicia's claims were filed prior to her graduation and prior to her 18th birthday. The District did not disclose to Alicia's mother, Michelle K. or to Alicia that their intention of the contract language was to permanently terminate Alicia's rights to IDEA, 504, ADA. The Hearing officer ignored material facts stated that Alicia did not sign the contact, was not a party to the settlement agreement, there was no mention of Alicia in the general release or waiver, there was no mention of Alicia's claims in the agreement and Alicia nor Michelle had legal representation, nor that the settlement agreement was procured by the ongoing violations of procedural safeguards that the BSEA has a duty to enforce and resulted in substantial due process violations. Plaintiffs allege that the District's actions were intended to permanently terminate Alicia's rights without notice by simply denying her rights throughout her entire education and then finally by not affording her substantial due process. The BSEA's negligence and clear error contributed by relying on inapplicable legal standards and misconstruing the contract language of a settlement agreement that does not resolve Alicia's claims whatsoever and caused the enforced the settlement agreement by dismissing the case, exceeding her authority under Massachusetts law.

45.     The BSEA has a duty and an obligation to protect the rights of the parties. However, there was a conflict of interest which Plaintiff's allege motivated them to retaliate against Michelle K. and deprive her daughter of her civil rights. This claim is brought under the

14

Equal Protection Clause of the United States Constitution, and 42 U.S.C. § 1983. 20 U.S.C. 1415(m).

46.      No language in the contract states that Michelle K. had any authority to dismiss Alicia's claims and to the contrary, Alicia's mother, Michelle K. made it abundantly clear that it was a conflict of interest in a letter to both the Districts attorney and Assistant Attorney General who was representing the BSEA in a matter that was not at all related to Alicia, but regarding an Appeal of BSEA 10-6783 (ESCV-2011-00691-A) on behalf of her brother Christopher at the Superior Court.

**VII    FACTUAL BACKGROUND**

**Kindergarten, First Grade and Second Grade (1999-2002)**

47.      In Kindergarten, Alicia's teacher reported that she was a "pleasure" to have in class but that she struggled to complete her work on time, was delayed in acquiring reading skills, developing appropriate work habits, paying attention and following through independently on tasks.

48.      Alicia's First Grade teacher reported the same, indicating on her report card that she had 'Commendable' social development skills in all areas, her work habits had improved and excelled in taking responsibility for homework ("Commendable") but that "Improvement" was needed to organize her time efficiently in class and to complete in class assignments. "Alicia continues to strengthen her reading, writing and math skills. Her reading fluency and comprehension are coming along. However, Alicia does not always complete work that is expected of her. I hope with your help we can solve this problem. Alicia is a delightful little girl and I enjoy having her in my class."

49.     Alicia's second grade experience was similar, and her teacher Mrs. Gray asked Mother to get Alicia's eyes examined as she thought it could be a vision deficit. However the eye exam was unremarkable, 20/20 vision. Alicia ended the year with still "apprentice" writing skills.

### Third, Fourth, Fifth and Sixth Grade(s) (2002-3; 2003-4, 2004-5; 2005-6)

50.     In the Third Grade (2002-3) Alicia's teacher Mrs. Stokes contacted Mother in October 2002 by telephone to share her concerns that Alicia was unable to organize her time efficiently, complete assignments on time, follow oral instructions, and believed it was affecting education. Mrs. Stokes asked Mother for permission to refer her for a special education evaluation and Mother agreed. Mother was asked to complete and return a questionnaire and was invited to a meeting to review the results with the School Psychologist and 3rd grade teacher Mrs. Stokes. A written report dated November 2002 was provided to Parents at the meeting and the School Psychologist explained that according to the results Alicia's teacher had reported clinically significant symptoms of ADHD Inattentive type observed in the classroom and were believed by the teacher to be interfering with her learning. Mother asked what the school recommended for Alicia, and the School Psychologist told her that the only thing that could be done was to have a doctor prescribe Alicia medication. The report's written recommendation was to "share the results with the appropriate medical personnel". Mother did not want to medicate Alicia based on a questionnaire. Mother asked if there were any other recommendations the school could make in lieu of medications. None were provided. Mother declined to share results with medical personnel. Alicia's report card was average and her MCAS reading score was 37 out of 40 (untimed).

51.     Mother was never provided with any Notice of Procedural Safeguard or Prior Written Notice of Refusal to Evaluate.  Parent was entirely unaware that any of these documents existed because the only two documents mother received was the questionnaire (Connor's Rating Scale) and the School Pscyhologist's written report and recommendations which states in pertinent part "Overall, Mrs. Stokes rated Alicia as exhibiting a significant number of characteristics that are closely associated with ADHD of the Inattentive type."

52.     As a result, Alicia was identified by the District in 3rd Grade to be a student with ADHD inattentive type, and although her teacher was the one to request the evaluation because she believed it was impairing Alicia's academic progress, the District was then aware that a disability existed and that it was negatively affecting her learning in the classroom.[4]

53.     Alicia's mother, Michelle K. believed the District had evaluated and considered Alicia for special education because this is what was represented to her, and that they found her ineligible for accommodations or special education services based on their specific misrepresentation that it was a health condition and only a medical professional could provide any remedy.  Since Alicia's mother, Michelle K. did not want to medicate Alicia she did not seek medical intervention.

54.     In 4th Grade, (2003-4) Alicia's 4th grade teacher, Mrs. Marshall brought the same concerns about classroom performance (slow, disorganized) to Michelle's attention; asked for and received permission to refer Alicia for an evaluation; and again Michelle and teacher completed questionnaires[5].  However, this time the District never produced any written report. Relying on the previous evaluation, Alicia's mother, Michelle K. expected the same results so did not actively pursue results and naively thought the teacher was unaware of the prior

---

[4] This report was conspicuously missing from Student Record provided to Michelle in February 2012 by District.
[5] Student Record did contain completed questionnaires by parent and teacher from 2003, 2004 and record of "TAT" meeting.

evaluation. Mrs. Marshall endeavored to get Alicia evaluated by requesting and participating in a TAT Meeting, and by attempting to following through on completing Attentional Inventories, and following back up with the TAT, all which are memorialized in the Student Record. Alicia's MCAS math score was 236 "needs improvement"; MCAS reading score was 246 "proficient" (both untimed).

55.    Alicia completed 5th without any further endeavors for services, accommodations, or evaluations and no concerns were reported by her teacher Mrs. Wiles whatsoever despite an unsatisfactory grade in social studies (D) for one semester. Alicia's MCAS science score was 240 "proficient" (untimed).

56.    Alicia's 6th grade report card was the first to note benchmark results in reading (high average). However the teacher noted the same concerns that were noted in grades K-4: improvement needed in following directions, maintaining focus and attention, completing homework, etc. Alicia's mother, Michelle K. retained Mrs. Thomas, 6th Grade teacher to tutor Alicia over the summer to preview the 7th grade material in order to be better prepared in middle school. Alicia received average grades of mostly C's, B's and occasional A's and D's. Alicia's report card was average and her MCAS scores were both "proficient" ELA score was 244; Mathematics score was 246 (both untimed).

**Middle School, Seventh and Eighth Grade (2006-7, 2007-8)**

57.    Alicia's 7th grade showed significant variability between classes. She received all A's and B's in every class but Math (Cs and Ds) who also noted on her report card "inconsistent effort, not working to potential, and Science teacher noted that "organization needs improvement". MCAS ELA score was 246 "proficient", and Mathematics score was 260 "advanced".

58.     Alicia's 8th grade was more successful with mostly all A's and B's and all comments were positive "a pleasure to have in class", "highly satisfactory conduct and effort", "exhibits a positive attitude". Alicia completed the High School Placement and earned "Above Average" scores in all content areas tested.

**High School Ninth Grade (2008-9) and Tenth Grade (2009-10)**

59.     Based on the results of her High School Placement Test, MCAS Tests and confirmed by the recommendations of her 9th grade teachers in her first semester of high school Alicia was moved up to Honors Level classes in every subject area that her schedule would allow.

60.     Alicia received Honor Roll her first semester, but shortly thereafter, Alicia's grades destabilized. By the end of 10th grade Alicia failed Honors Spanish and had to repeat the following year.

**High School Eleventh Grade (2010-11) and Twelfth Grade (2011-12)**

61.     Relying on District's written recommendation from 2002, Michelle sought medical intervention to treat Alicia's alleged ADHD at the beginning of 11th Grade. Surprisingly, however Alicia was found NOT to have ADHD based on the questionnaires completed by her teachers, her parents and herself.

62.     Michelle requested an evaluation by the District in May 2011.

63.     Alicia failed Honors Physics in 11th Grade for the full year in June 2011 and had to retake it the next year.

64.     The District completed their evaluation in October of Alicia's 12th grade year.

65.     The District Psychological Evaluation was comprised of only one test (WAIS-IV) which reported Alicia's Verbal Comprehension to be 88% (High Average), Perceptual Reasoning to be 81% (High Average), and Processing Speed to be 8% (Borderline).

66.     The District initially refused to conduct a Speech and Language Evaluation specifically requested by Michelle, but later agreed and found her rapid naming speed to be 12% (Below Average) for reading speed.

67.     The District's "Specialist Summary Report" found Alicia's Math Fluency was 12% (Limited), and reported that she'd failed Physics and was currently failing Spanish.

68.     The Team met on October 18, 2012 and based on all of this information did not find Alicia eligible for either special education or 504/ADA.

69.     During the meeting, Alicia was made to feel ashamed of herself for not trying hard enough, blamed for her failure to date as "lack of effort" and finally she was asked directly[6] in front of a room of approximately 10 adults why she would want to have a disability?  When Alicia didn't respond, Mr. Tiano told her that because she only had one disability, it was not enough to find her eligible (for anything).

70.     Michelle notified the District in writing on November 3, 2011 that she disagreed with evaluation, with the team's determination, that she sought Independent Education Evaluations ("IEE") at the Districts expense and requested a copy of Alicia's Student Record. The District never responded at all.

71.     Alicia's mother, Michelle K. obtained Independent Evaluations for Alicia that were done by MGH for reading disabilities in December 2011, and by Dr. Nancy Roosa, Psy.D. for Neuropsychological evaluation in April 2012.

---

[6] Mr. John Tiano, Special Education Director is no longer employed by the District

72.     Michelle provided the District with the MGH results in January 2012 and requested the District to reconvene the Team to consider.

73.     The team met on February 1, 2012, reviewed the report, and considered Alicia's recent SAT scores recently taken with 504/ADA accommodations (based on the Districts own evaluations).  Alicia's SAT scores had significant improved with the extra time and were more representative of her aptitude[7].  The Team however continued to deny Alicia eligibility for both IEP and 504/ADA rights.

74.     On May 1, 2012 Alicia's mother, Michelle K. provided the Neuropsychological Evaluation to the District and requested the Team reconvene to consider the report. The team never reconvened.

75.     The Evaluations show that Alicia is a student with a disorder in one or more of the basic psychological processes involved in understanding or in using language, spoken or written, that manifests itself in the imperfect ability to read, write, and do mathematical calculations; and has also been diagnosed with a functional disability in Executive Function which is the imperfect ability to plan, organize, manage time effectively.  This is defined as a "Specific Learning Disability" under IDEA, 20 U.S.C. 1401 (3); 1401(30).

76.     Alicia was not identified by the school as a student eligible for special education, nor a student eligible to receive protection under Section 504 of the Rehabilitation Act of 1973, §794 *et seq.*, ("Section 504"), or Title II of the American Disabilities Act of 1990, 42  U.S.C. §§12101 *et seq.* ("ADA").

77.     On May 23, 2012 Alicia's mother, Michelle K. requested an expedited due process hearing complaint in accordance with BSEA Hearing Rule II(C)(1)(b)(iii) "the student is

---

[7] 11/05/2011 SAT Scores (no accommodations): Reading 620; Math 520, Writing 570;
12/03/2011 SAT Scores (with extra time): Reading 660; Math 580; Writing 670

without an available education program or the student's program will be terminated or

interrupted."

78.     On May 25, 2012 Reece Erlichman, the Director of the BSEA issued a letter

stating "The request does not appear to satisfy the standard for an expedited hearing pursuant to

the IDEA 20 U.S.C. section 1415, or the applicable Hearing Rules for Special Education

Appeals." The due process hearing was scheduled for June 28, 2012 with a mandatory

resolution meeting deadline of June 8, 2012 and the end of the 30 Day Resolution Session was

June 25, 2012. The Hearing Officer assigned to this Hearing was Rosa Figueroa.

79.     On May 29, 2012 Alicia's mother, Michelle K. wrote to the BSEA requesting

reconsideration of expedited status due to the pending graduation date when Alicia's "program"

would end. A State may establish different State-imposed procedural rules for expedited due

process hearings conducted under this 34 C.F.R.532 that it has established for other due process

hearings, but, except for the timelines as modified in 34 C.F.R.300.532(c)(3), the State must

ensure that the requirements in 34 C.F.R. 300.510 through 300.514 are met. The BSEA did not

respond.

80.     On May 30, 2012, Paul O'Brien from the BSEA called to convene a conference

call for the next day, May 31, 2012 with the Hearing Officer and District's attorney.[8]

81.     On May 31, 2012 during the conference call, Alicia's mother, Michelle K.

explained why she felt that an expedited hearing was appropriate, that the school had denied

student's eligibility and that until Alicia was determined eligible, she was prevented from

disputing graduation. The Hearing Officer ordered a Pre-Hearing Conference and asked the

District's attorney to send a letter requesting the postponement; scheduling the Pre-hearing

---

[8] Plaintiff never received a docket entry for this conference call however, it is referenced in Order dated July 11, 2012 signed Rosa Figueroa, Hearing Officer.

Conference on July 19, 2012 *which is 21 days after the regular timeline due process hearing was originally scheduled for on June 28, 2012* and Michelle was trying to expedite, not delay.

82.     Alicia's mother, Michelle K. at no time agreed to postpone the hearing date contrary to the District's letter dated June 5, 2012 and the Order dated June 7, 2012.[9]  See BSEA Rule V (A) Prehearing Conference, Prerequisite: "A prehearing conference may be conducted only after a request for hearing has been filed with the BSEA and the parties have either completed or waived the resolution session." The parties never completed or waived the resolution session so this was procedurally erroneous.

83.     BSEA Rule V (D): When One Party or Neither Party Requests a Prehearing Conference: If the Hearing Officer determines that a prehearing conference is necessary, the conference may be scheduled, but shall not delay the hearing.

84.     The prehearing conference did not comply with due process requirements expressly stated in BSEA Rule V (C):  When Both Parties Request a Prehearing Conference "A Hearing Officer shall conduct such a prehearing conference upon joint request of the parties once the parties have either completed or waived the resolution session. (emphasis added).

85.     Responsibility of SEA and other public agencies.  Each SEA must ensure that each public agency establishes, maintains, and implements procedural safeguards that meet the requirements of §§ 300.500 through 300.536.  [20 U.S.C. 1415(f)(1)(B)]

86.     Also during the May 31, 2012 conference call, the Hearing Officer ordered Alicia's mother, Michelle K. to send the material evidence in advance of the pre-hearing conference to both the BSEA and the District to review in advance, which Michelle complied.

---

[9] District's attorney wrote request to postponement of automatic hearing date "due to the fact that the Parties agreed to a pre-hearing conference on July 19th". Order dated June 7, 2012 pursuant to that letter is signed by R.E. (Reece Erlichman, Director of the BSEA on behalf of the Hearing Officer, Rosa Figueroa.

87.     On June 22, 2012 the District provided their response to hearing request that was due on June 4, 2012.

88.     On July 11, 2012 the BSEA issued another Order for the pre-hearing conference.[10]

89.     On July 19, 2012 the BSEA issued an Order – Pursuant to the Pre-Hearing Conference held on July 19, 2012, in which the Hearing Officer bi-furcated the Parent's reimbursement for independent evaluation from the remaining Student's claims. The District and the BSEA were fully aware that Alicia's mother Michelle K. lacked the legal authority to make decisions on behalf of Alicia for any of her claims once she turned 18 on July 25th, 2012. Third, "all remaining issues" omits several issues from the original hearing that were not discussed or agreed upon.

90.     No discussion regarding the sufficiency of Alicia's claims were discussed except that the Hearing Officer commented very pointedly that "Pentucket has a lot of explaining to do", and "there is no way she is a C student based on the record".

91.     Alicia was not a "C" student; she was ranked 185 out of 187 graduating seniors.

92.     Alicia's mother Michelle K. submitted the required Argument and stipulation of facts on July 27, 2012 regarding the reimbursement for IEE.

93.     On July 30th, 2012, Alicia's mother, Michelle K. sent Discovery Request for Production of Documents to the District and copies to the BSEA.

94.     On July 31, 2012 Alicia's mother, Michelle K. sent Discovery Request for Interrogatories to the District and copies to the BSEA.

---

[10] The July 11, 2012 Order for Pre-Hearing Conference is signed by the Hearing Officer directly.
The Hearing Officer, Rosa Figueroa for Alicia K. v. Pentucket BSEA 12-8636 never addressed any need for a Resolution Meeting.

95.     On August 2, 2012 the District offered Alicia's mother Michelle K. a settlement agreement on behalf of her son, Christopher K (BSEA 12-9569)[11], and to settle the reimbursement of Parent's independent evaluation(s). (emphasis added)

96.     On August 3, 2012 Alicia, mother and brother left for vacation and District's attorney asked if she could send request postponing the hearing for two weeks which Alicia's mother, Michelle K. agreed since they were not returning until August 12, 2012.

97.     on August 14, 2012 Alicia's mother, Michelle K. received and reviewed the District's settlement agreement and provided written notice to both the District's attorney and the Assistant Attorney General ("AAG") representing the BSEA in Christopher's Appeal at the Superior Court (ESCV-2011-00691-A) that this was entirely unacceptable as it required Alicia's signature but offered Alicia no remedies for her education related claims and that it was a conflict of interest existed for Alicia's mother, Michelle K. and Alicia just turned 18 years old and had no legal counsel.[12]

98.     On September 5, 2012 in a conference call regarding Christopher K. BSEA 12-9569, Alicia's mother informed District's attorney that in order to agree to the settlement agreement offered, she required a joint stipulation for the Courts Approval and ongoing jurisdiction. District's attorney represented they were amenable to that but she needed to check with her client first to confirm.

99.     On September 14, 2012 Alicia's mother, Michelle K. had not received a response from the District confirming agreement to Joint stipulation to court approval and ongoing

---

[11] The Hearing Officer, William Crane for Christopher K. v Pentucket BSEA 12-9569 did verbally direct the District to convene a Resolution Meeting but the District did not comply.

[12] Alicia's mother, Michelle K. had engaged counsel who provided limited representation with respect to Christopher K. v. Pentucket Public Schools, BSEA 12-9569 only.  No one ever indicated otherwise and Michelle K. and counsel mutually agreed to terminate limited representation on November 21, 2012.

jurisdiction so she requested a two week postponement and a scheduled status conference in two weeks. The Hearing Officer wrote "Request Granted" notation on the document and sent copy to Mother but did not convene the requested Status Conference in two weeks. In fact, no further action was taken by the BSEA whatsoever until November 20, 2012.

100.    The District's attorney represented to Alicia's mother, Michelle K. for all relevant periods until November 1, 2012 that they were in agreement with a joint stipulation for motion of court approval of the settlement agreement and ongoing jurisdiction by the Superior Court.

101.    On November 1, 2012 when all parties (including the AAG representing the BSEA) appeared for a status conference at the Superior Court regarding (ESCV-2011-00691-A) however, the District notified Alicia's mother, Michelle K. that they changed their mind.

102.    In a scheduled conference call regarding Christopher K. v. Pentucket, BSEA 12-9569 on November 15, 2012 the hearing was put back on the calendar for December 14, 17, and 18th 2012.

103.    With regard to Alicia K. v. Pentucket BSEA 12-8636, Alicia's mother, Michelle K. received via certified mail on November 24, 2012 an Order to Show Cause dated November 20, 2012.

104.    Both Alicia K. and her mother, Michelle K. signed and submitted their Answer to Show Cause, received by the BSEA via certified mail on November 27, 2012 that due to the District's change of plans with regard to Court Approval and ongoing Jurisdiction, they were requesting a status conference and to add Alicia's name as a party, and asked if Alicia's mother, Michelle K. could represent Alicia as an Advocate pursuant to BSEA Rule I(6) and continue to represent herself as Pro Se on her own behalf (re: reimbursements). The BSEA did not act or respond to this information. No conference call was scheduled and no response was received.

105.    On November 27, 2012 Alicia's mother, Michelle K. filed a Motion to Compel Discovery, Proposed Stipulated Facts, Answers to Interrogatories and Pre-Conference Hearing and Affidavit with respect to Christopher K. v Pentucket, BSEA 12-9569.

106.    On November 28, 2012 the District's attorney contacted Alicia's mother, Michelle K. to express her dissatisfaction with the Motion and informed Michelle that it was the AAG representing the BSEA (and NOT the District) who was opposed to the Stipulation to Court Approval and ongoing Jurisdiction by the Superior Court.

107.    The District's attorney agreed to remove all language regarding Alicia K. BSEA 12-8636 from the settlement agreement.  Based on this development, Alicia's mother, Michelle K. re-engaged in the settlement discussions.

108.    The District made their "Final Offer" on Friday, November 30th, 2012 at approximately 4:00pm, via email and required a response by Sunday evening, December 2, 2012.  This prevented Alicia's mother, Michelle K. from seeking legal advice over the weekend.

109.    The language now again "required" Alicia's mother, Michelle K. to leave the language in regarding Mother's Claims involving daughter - which was "similar" to language that was developed previously.

110.    Alicia had no counsel and her mother Michelle K. had limited representation on behalf of Christopher (only in relation to BSEA 12-9569) which had terminated on November 21, 2012 which the District's attorney was informed about on or about November 21, 2012.

111.    The District added language to the settlement agreement that court may provide ongoing jurisdiction of the Superior Court; however instead of stipulating they required Alicia's mother, Michelle K. to file a motion to this effect due to the BSEA's ongoing opposition to this stipulation and importantly, required Michelle K. to sign the settlement agreement in advance.

112.   A month later, on December 20th, 2012 Alicia and her mother filed an amended complaint. The District objected.[13]

113.   A conference call was scheduled for February 8, 2013. Alicia was planning to participate but the BSEA never called.

114.   On February 14th the BSEA contacted Alicia's mother, Michelle K. to participate in a same day conference call, despite her objections that Alicia was not available on such short notice. There was no advanced notice regarding the subject matter of the call. The call was regarding the Amended Hearing Request.

115.   The hearing officer explained that in order to meet the requirement of administrative exhaustion, she had to review the contract via a motion to dismiss and opposition.

116.   There was no dispute about dismissal of Mother's claims limited to reimbursement for IEEs involving Alicia (see amended complaint). The District was alleging that Alicia's Mother, Michelle K. agreed to dismiss Alicia's claims.

117.   The Hearing officer construed the contract language as the District alleged, despite material facts which the Hearing Officer ignored and omitted from her decision and dismissed Mother's claims "with prejudice" even though no dispute was brought about Mother's claims, and dismissed Alicia's claims "without prejudice" even though the contract doesn't even mention Alicia or her claims.

VIII.   **CAUSES OF ACTION**

**COUNT I: APPEAL FROM ADMINISTRATIVE DECISON**

118.   The factual averments set forth in Paragraphs 1 – 117 are re-alleged and incorporated by reference herein.

---

[13] Alicia was involved in a serious skiing accident on January 5, 2013 and Plaintiff's asked for postponement for 3 weeks so any delays between January 7th and February 8th are not attributable to any procedural violations.

119.    The District violated both Alicia and her mother, Michelle K's substantial due process rights which is supported by the record.

120.    The BSEA violated both Alicia and her mother, Michelle K.'s mandatory procedural safeguards which denied Plaintiffs substantial due process and resulted in denying student with FAPE, which is supported by the record.

121.    The Hearing Officer dismissed Alicia's claims without prejudice based on her interpretation of the contract language of a settlement agreement to which Alicia was not a party.

122.    The BSEA dismissed Alicia's mother, Michelle K.'s claims "with prejudice" despite fact that they were not in dispute and did not require administrative exhaustion because Mother had already withdrew them on December 20, 2012 in her amended complaint submitted on December 20, 2012. It was Alicia's Claims that the school district objected to in the amended complaint and the school district had the burden of proof on the Motion to Dismiss and yet didn't offer any proof that met the legal standard needed when interpreting a contract.

123.    This is a matter of law and is reviewed full denovo.

124.    The BSEA did not apply the correct legal standard for a Motion to Dismiss involving the waiver of a federal civil right.

125.    The BSEA did not apply the correct legal standard for cases involving Pro Se litigants.

126.    The BSEA exceeded her authority by disregarding material facts that are mandatory procedural safeguards and are not within her discretion, but are mandatory.

127.    The BSEA did not apply the correct legal standard in determining that Parent was acting as Alicia's agent at the time of the settlement agreement.

128.   The BSEA did not enforce a Resolution Meeting at any time prior to the disposition of this case.

129.   The BSEA effectively (but not procedurally) took the due process hearing "off calendar" on May 31, 2012 in a conference call scheduled by the BSEA on May 30th. No docket entry represents this conference call and no notice was given as to what the conference call was regarding.  In the conference call the Hearing Officer announced she was going to require a Pre-Hearing Conference and scheduled it for July 19th.  This was twenty days after the June 28th regular due process Hearing was scheduled and 6 days prior to Alicia's 18th Birthday[14].

130.   The Hearing Officer also instructed the District's Attorney to send a letter requesting postponement.  The District's letter states that it was by "agreement of the parties" which is not true.  BSEA hearing rules do not allow indefinite postponement of a Hearing in scheduling a Pre-Hearing Conference.

131.   Joint agreement to postponement a Hearing still requires the BSEA to enforce that a Resolution Meeting occurs before both a Pre-Hearing Conference and Hearing.  This did not happen.  A Resolution Meeting is a Due Process Procedural Safeguard and is mandatory not discretionary.  The Hearing officer did not just abuse her discretion, she exceeded her authority and this decision is clearly erroneous.

132.   The BSEA clearly violated almost every applicable procedural due process safeguard during this case by delaying Alicia's hearing indefinitely on May 31, 2012, ordering and holding a Pre-Conference Hearing without enforcing a resolution meeting, after allowing a two week postponement requested on August 3, 2012, the BSEA never scheduled another hearing date despite specific request by Plaintiff on September 14, 2012.

---

[14] Alicia was not present for the conference call, nor was she present at the Pre-Hearing Conference.

133.   The District's actions and omissions prevented Michelle K. from understanding her rights and from asserting Alicia's claims.

134.   The Districts actions and omissions prevented Alicia K. from understanding and asserting her rights upon turning 18 on July 25, 2012.

135.   The Decision is clearly erroneous, against public policy, exceeds the authority of the BSEA Hearing Officer and should be reversed.

## COUNT II: THE DISTRICT, THROUGH BAD FAITH AND GROSS MISMANAGEMENT, INTENTIONALLY DISCRIMINATED AGAINST ALICIA ON THE BASIS OF HER DISABILITIES IN VIOLATION OF HER RIGHTS UNDER SECTION 504 OF THE REHABILITATION ACT AND THE ADA

136.   The factual averments set forth in Paragraphs 1 – 135 are re-alleged and incorporated by reference herein.

137.   In spite of her disabilities, Alicia is a student who was otherwise qualified to participate in the District's educational programs with appropriate instruction, accommodations and supplement supports.

138.   From the time Alicia was in the 3rd grade in November 2002 when she was considered by the district as a student with a disability, the District failed to provide her with appropriate educational and related services, accommodations, and supplemental services which he required in order to have access to the District's programs and services and to make appropriate educational progress equal to that provided to children without disabilities and equal to that provided to children with similar disabilities.

139.   The District's failure to provide FAPE to Alicia and to properly accommodate her disabilities was the result of bad faith and gross mismanagement, and discriminated against Alicia on the basis of her disabilities.

140.    The District's failure to timely locate, evaluate and provide appropriate educational services, accommodations, and related services to Alicia, has among other things limited the opportunity of Alicia to participate in a meaning educational, to pursue post secondary education that she has the aptitude, ability and desire to pursue, limited her access to enjoy extracurricular activities and employment within the school that other students with and without disabilities enjoy and she was entitled to those opportunities, delayed and extended the years it will take Alicia to develop appropriate compensatory skills and learning strategies that she can implement in her post secondary education, increased the number of years and cost of her post secondary education, delayed the opportunity of entering the workforce and without compensatory education and compensatory damages, will very likely reduce the earning capacity of Alicia in her lifetime that she would have otherwise had the opportunity to attain.

141.    The District's failure to timely locate, evaluate and provide appropriate educational services, accommodations and related services to Alicia has also harmed her mother, Michelle Keating in her own right by having to pay for specialized education at Landmark College for 2012-2013 due solely to the District shirking their mandatory obligations which they receive federal funds expressly for this purpose by refusing to provide due process.

## COUNT III:  INTENTIONAL DISCRIMINATION AGAINST ALICIA IN VIOLATION OF HER RIGHTS PURUSANT TO THE EQUAL PROTECTION CLAUSE AND SECTION 1983

142.    The factual averments set forth in Paragraphs 1-141 are re-alleged and incorporated by reference herein.

143.    The Equal Protection Clause of the United States Constitution provides Alicia with substantive protection from unequal treatment based on her disability which is not rationally related to an important state interest.

32

144.    The District, intentionally and under color of law, has discriminated against Alicia on the basis of her disability, without rational justification or excuse, and without any legitimate or important governmental need to do so, and has thereby deprived her of the equal protection of the law.

145.    The District's actions were in furtherance of an official policy or ratification of systemic practices which it knew or should have known violate Alicia's well-established federal constitutional rights as well as of the rights of other children with disabilities, and was in deliberate indifference of those rights.  The District also systematically failed to train its staff or to supervise its staff and contractors to prevent the deprivation of FAPE to Alicia and others like her and for whom the District is required to provide equal education opportunities in spite of their disabilities.

146.    The District violated Alicia's right to equal protection of the law pursuant to the Fourteenth Amendment of the United States Constitution and in violation of 42 U.S.C. § 1983.

147.    The BSEA, intentionally, under the color of law, has discriminated against Alicia on the basis of her disability, without rational justification or excuse, and without any legitimate or important governmental need to do so, and has thereby deprived her of the equal protection of the law.

148.    The BSEA's actions were in furtherance of an official policy or ratification of systemic practices which it knew or should have know violate Alicia's well-established federal constitutional rights as well as of the rights of other children with disabilities, and was in deliberate indifference of those rights.  The BEA also systemically failed to train its staff or the supervision its staff and contractors to prevent the deprivation of FAPE to Alicia and others like

her and for whom the BSEA is required to provide equal protection opportunities in spite of their

disabilities.

149.    The BSEA violated Alicia's right to equal protection of the law pursuant to the

Fourteenth Amendment of the United States Constitution and in violation of 42 U.S.C. § 1983

**COUNT V: DEFENDANT'S FAILURE TO REIMBURSE PLAINTIFFS FOR THEIR TUITION AND RELATED COSTS VIOLATES THEIR RIGHTS PURSUANT TO THE IDEA AND SECTION 504 AND 42 U.S.C. § 1988.**

150.    The factual averments set forth in Paragraph 1-146 are re-alleged and

incorporated by reference herein.

151.    Parent's who succeed on any significant issue in any action or proceeding under

the IDEA and/or Section 504 are prevailing parties and thereby entitled to recover their

reasonable attorney's fees and costs. Plaintiffs hereby retain this right to legal representation

whether paid, limited or pro bono during this balance of this proceeding.  20 U.S.C. §

1415(i)(3)(A) & (B); 29 U.S.C. § 794a (b); 42 U.S.C. § 1988.

152.    As a result of the Hearing Officer's actions to deprive Alicia of her procedural

safeguards mandated under IDEA she denied Alicia substantial due process under the color of

law.  This is not a discretionary function of the BSEA and therefore denied Alicia FAPE.

153.    At all times during the administrative proceedings below, the Plaintiffs were

denied a hearing and therefore Alicia's mother, Michelle K. is entitled to be reimbursed for her

costs of providing an educational program for Alicia when the District did not propose or offer

Alicia another other program and did not comply with mandatory due process protections.

154.    Michelle K. has completed a sworn affidavit attesting to her expenses incurred

during the pendency of this hearing for her unilateral place of Alicia at Landmark College for the

school year of 2012-2013 and prospectively throughout the duration of the proceedings which

the District was notified of in the original complaint dated May 23, 2012 which is re-alleged and incorporated by reference herein.

## VI.   PRAYER FOR RELIEF

Wherefore, the Plaintiffs request the following relief:

1.     That this Court accept jurisdiction over the violations of procedural safeguards and determine that Plaintiffs substantial due process was denied under the color of law and award Plantiffs reimbursement for education costs incurred since May 31, 2012.

2.      That this Court accept jurisdiction over the Motion to Dismiss and provide a full de novo review of the settlement agreement in consideration that no resolution session was afforded, thereby Defendant's used their own violations as a mechanism to obtain a settlement agreement which does not conform to the requirements of a settlement agreement obtained in a resolution session, and that defendants wrote the contract, Alicia was not a party, Michelle was unrepresented and Defendant did not give Plaintiff's any time to review the contract language prior to signing it, and did not disclose that their construction of the language in paragraphs 8 and 9 were intended to terminate Alicia's rights to FAPE and to provide declaratory relief determining that the language in paragraphs 8 and 9 are void, against public policy and are severed from the agreement.

3.     That this court allow Alicia to be substituted as a party in her own name as she is the correct party of interest;

4.     That this Court accept jurisdiction over the child find claims set forth herein, take additional evidence, and determine based on the preponderance of evidence that

Alicia is a student with a disability who would have been entitled for either IDEA or

Section 504, or ADA at any relevant time, in particular when she was considered to

be a child with a disability in November 2002 by the District, that this Court find an

Exemption to the Statute of Limitations and award Alicia compensatory education

and compensatory damages based on her needs at the time.

5.      Award Alicia and Michelle K. injunctive relief for the costs related to the 2012-2013

school year incurred for her placement at Landmark College due to her being left

entirely without any remedy by the District.

6.      Award Alicia compensatory damages to redress the injuries she has sustained as a

result of the Defendant's illegal conduct and the deliberate indifferent violations of

his rights;

7.      Award Plaintiffs all the reasonable attorney fees and costs which she will incur in

prosecuting this action in her own name;

8.      Grant such other relief as this Court deems just and appropriate.


Respectfully,

By:

Michelle Keating, Pro Se for Plaintiffs
4 Parker Road
Groveland, MA 01834
978-469-1887

Date:  June 10, 2013